# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2235
_____

Gosiger, Inc.

*Plaintiff - Appellant*

v.

Elliott Aviation, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 13, 2016
Filed: May 23, 2016

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

Elliott Aviation, Inc. damaged Gosiger, Inc.'s aircraft. Gosiger seeks damages for the diminished value of the aircraft. The district court[1] granted summary

_____

[1]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

judgment to Elliott Aviation, ruling that the contract did not allow diminution-in-value damages. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Gosiger, an Ohio corporation, owns a business aircraft BB1488, a King Air B200. Elliott Aviation, an Iowa corporation, services aircraft. In October 2012, by a "Specification for Gosiger Inc.," Gosiger contracted with Elliott for maintenance on the aircraft and installation of a new avionics suite.

The "Responsibilities" section says:

On Ground Responsibilities. Elliott Aviation is responsible for all claims, demands, suits, judgments, losses, damages, costs and expenses which arise on the ground out of Elliott Aviation's negligence in performing Services on the Aircraft.

In Flight Responsibilities. Customer agrees and understands that Customer is responsible for all claims, demands, suits, judgments, losses, damages, costs and expenses arising out of the in flight operation of the Aircraft, except to the extent that such claims, demands, suits, judgments, losses, damages, costs and expenses arise out of Elliott Aviation's negligence in performing Services (as defined in the Proposal) on the Aircraft. . . . .

Immediately after the "Responsibilities" section is a "Limitations of Liability" section:

IN NO EVENT SHALL COMPANY BE LIABLE FOR ANY LOSS OF USE OF THE AIRCRAFT OR LOSS OF PROFITS, DIMINUTION IN VALUE . . . DAMAGES OR LOSSES, . . . . In the event Elliott Aviation physically damages Customer's property, Customer's sole and exclusive remedy, and Elliott Aviation's sole and exclusive liability, is limited to

-2-

the repair or replacement (at Elliott Aviation's option) of the damaged portion of the property.

While servicing Gosiger's aircraft on the ground, Elliott Aviation cut the right wing, main spar. Elliott repaired it in accordance with the aircraft manufacturer's recommendation. The parties began to negotiate about the damage to the aircraft. Gosiger wanted compensation for diminution in value of the aircraft.

In January 2013, Elliott Aviation offered Gosiger $9,000 for diminution in value. The parties signed a "Return to Service Agreement," which says:

> To allow Gosiger Inc. to accept delivery and utilize their aircraft while at the same time giving Gosiger, Inc. time to evaluate the $9,000.00 diminution settlement offer for BB1488, Elliott Aviation is offering to allow Gosiger Inc. to pay their existing invoice down to an outstanding balance of $60,000.00 USD.

This Agreement continues:

> Should Gosiger agree to these terms, Gosiger Inc. would pay Elliott Aviation 438,843.21 USD upon delivery of the aircraft with the remaining 60,000.00 USD (less settlement amount) due to Elliott Aviation within 5 days of the mutually agreed upon settlement date; provided, however, that if we can't come to an acceptable settlement of the matter by February 28, 2013, we will engage in mediation within thirty (30) days with a Mediator with experience in the nature of the dispute, i.e. diminution of the value of the aircraft.

Gosiger paid the $438,843.21. Elliott returned the aircraft. Gosiger, however, rejected the $9,000 settlement offer. Instead, Gosiger had the aircraft appraised to determine the diminution in fair market value from the damaged wing spar. According to the appraisal, the diminished value of the aircraft was $310,000. Gosiger demanded $310,000; Elliott refused to pay. Elliott then obtained another

appraisal, which set the diminished value at $41,908. Elliott offered $41,908; Gosiger rejected the offer.

After unsuccessful mediation, Gosiger sued. Elliott moved for summary judgment. The district court granted the motion, finding that neither the Specification Agreement nor the Return to Service Agreement authorized diminution damages. Gosiger appeals.

## II.

This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. Both parties agree Iowa law applies.

Gosiger argues that the Specification Agreement is ambiguous whether it excludes diminution damages. Gosiger emphasizes the "Responsibilities" section of the Specification Agreement: "Elliott Aviation is responsible for *all* claims, demands, suits, judgments, losses, damages, costs and expenses which arise on the ground out of Elliott Aviation's negligence. . . ." (Emphasis added). Gosiger believes that this language—especially the word "all"—directly conflicts with the "Limitations of Liability" section's express exclusion of diminution damages.

A court "generally review[s] the construction and interpretation of a contract as a matter of law. . . . The question whether an ambiguity exists is also one of law." *Hartig Drug Co. v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). "It is a fundamental and well-settled rule that when a contract is not ambiguous, [the court] must simply interpret it as written." *Smidt v. Porter*, 695 N.W.2d 9, 21 (Iowa 2005). A contract "is not ambiguous merely because the parties disagree over its meaning," rather "an

-4-

ambiguity occurs in a contract when a genuine uncertainty exists concerning which of two reasonable interpretations is proper." ***Hartig Drug Co.***, 602 N.W.2d at 797. A "contract is to be interpreted as a whole . . . an interpretation which gives a reasonable, lawful, and effective meaning to all terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." ***Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents***, 471 N.W.2d 859, 863 (Iowa 1991).

The provisions of the Specification Agreement, interpreted as a whole, do not conflict. The "Responsibilities" section does describe the parties' responsibilities. But, the "Limitations of Liability" section immediately limits the remedies available, specifically limiting Elliott's liability to "repair or replacement" and expressly disallowing "DIMINUTION IN VALUE" damages or losses. *See **Johnson Controls, Inc. v. City of Cedar Rapids***, 713 F.2d 370, 374 (8th Cir. 1983) (stating that "if two clauses of a contract appear to be in conflict, the preferred interpretation is the one that gives a 'harmonious interpretation' to the clauses in order to avoid rendering either one nugatory."). This case is not like Gosiger's main case, where a "series of contradictory statements creates what appears to be an ambiguity which should have survived a Rule 12(b)(6) motion to dismiss." ***Denton Constr. Co. v. Missouri Portland Cement Co.***, 659 F.2d 873, 875 (8th Cir. 1981). Here—at the summary judgment stage—the contract has no contradictory statements and no ambiguity.

Gosiger next asserts that Elliott waived the "Limitations of Liability" provision by its conduct: by purchasing insurance that may cover diminution damages, and by offering to settle Gosiger's diminution claims. Iowa law defines waiver as "the intentional relinquishment of a known right . . . . It is consensual in its nature; the intention may be inferred from conduct, and the knowledge may be actual or constructive, but both knowledge and intent are essential elements." ***United Forest Prods. Co. v. Baxter***, 452 F.2d 11, 16 (8th Cir. 1971) (applying Iowa law).

First, potential insurance coverage of diminution damages does not waive an express section in the Specification Agreement. The "words of an integrated

agreement remain the most important evidence of intention." ***Walsh v. Nelson***, 622 N.W.2d 499, 503 (Iowa 2001), *quoting* **Restatement (Second) of Contracts § 212 cmt. b** (1981). Potential insurance coverage is not an "intentional relinquishment of a known right." Second, Elliott's offers are not waivers. Under Iowa law, an offer to compromise a claim is not the "foundation of a waiver" unless it has a statement that indicates waiver. ***Houdeck v. Merchants & Bankers Ins. Co.***, 71 N.W. 354, 355 (Iowa 1897). Elliott's offers had no statement of waiver. And, the Specification Agreement has a "Non-Waiver of Rights and Remedies" clause.

Gosiger last contends that the Return to Service Agreement obliges Elliott to pay diminution in value. An "original contract generally remains in force except as modified or superseded by the new agreement." ***Recker v. Gustafson***, 279 N.W.2d 744, 754 (Iowa 1979). "Settlement agreements are essentially contracts" and courts "look to contract principles when interpreting settlement agreements." ***Rick v. Sprague***, 706 N.W.2d 717, 723 (Iowa 2005). "To be bound, the contracting parties must manifest a mutual assent to the terms of the contract." ***Id.*** at 724. Mutual assent is usually "given through the offer and acceptance" and "the acceptance must conform strictly to the offer in all its conditions, without any deviation or condition whatever." ***Id.*** Interpreting contracts, courts may look to extrinsic evidence, including "the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties." ***Peak v. Adams***, 799 N.W.2d 535, 544 (Iowa 2011). Yet, the "most important evidence of the parties' intentions at the time of contracting is the words of the contract." ***Id.***

The Return to Service Agreement says:

> To allow Gosiger Inc. to accept delivery and utilize their aircraft while at the same time giving Gosiger, Inc. time to evaluate the $9,000.00 diminution settlement offer for BB1488, Elliott Aviation is offering to

allow Gosiger Inc. to pay their existing invoice down to an outstanding balance of $60,000.00 USD.

Gosiger urges that this amended the Specification Agreement to allow for diminution damages. To the contrary, the reference to "diminution" is conditioned on "time to evaluate" it. The Return to Service Agreement requires payment of the "remaining 60,000.00 USD (less settlement amount)" only *if* the parties "come to an acceptable settlement." Because the Return to Service Agreement is clear, the negotiations are irrelevant. *See **Peak***, 799 N.W.2d at 544 (holding "extrinsic evidence cannot alter the legal effect of the unambiguous contract language"). Gosiger and Elliott never mutually agreed to modify the Specification Agreement to allow for diminution-in-value damages.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____